**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NOEL ANATALIO, | : | |
| Plaintiff, | : | Civil Action No.: |
| | : | |
| v. | : | |
| | : | |
| GOOD SHEPHERD REHABILITATION | : | |
| NETWORK, | : | JURY TRIAL DEMANDED |
| Defendant. | : | |

## COMPLAINT

Plaintiff Noel Anatalio, by his attorneys, Broughal & DeVito, LLP, by his attorneys, Broughal & DeVito, LLP, files this Complaint against Defendant Good Shepherd Rehabilitation Network ("Defendant").

## NATURE OF THE ACTION

1. This is an action for unlawful employment discrimination, hostile work environment, failure to promote, and retaliation arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.; 42 U.S.C. § 1981; The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq.; and The Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951 et seq.

2. This action arises from Defendant's pattern and practice of subjecting Plaintiff, a Filipino-American registered nurse over the age of forty, to disparate discipline, denial of applications for different positions, a hostile and humiliating

work environment, and termination because of his race, color, national origin, and age, and in retaliation for engaging in protected activity.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

4.      This Court has supplemental jurisdiction over Plaintiff's PHRA claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## PROCEDURAL PREREQUISITES

6.      Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was dual-filed with the Pennsylvania Human Relations Commission ("PHRC").

7.      On or about February 10, 2026, the EEOC issued Plaintiff a Notice of Right to Sue, which Plaintiff received. This action is timely filed within ninety (90) days of receipt.

8.      Plaintiff has exhausted all administrative prerequisites to suit under Title VII, the ADEA, and the PHRA. Administrative exhaustion is not required for Plaintiff's claims under 42 U.S.C. § 1981.

**FACTS**

9.     Plaintiff Noel Anatalio is an individual residing in Whitehall, Pennsylvania. Plaintiff is a Filipino-American registered nurse over the age of forty.

10.     Defendant Good Shepherd Rehabilitation Network is a Pennsylvania corporation with its principal place of business in Allentown, Pennsylvania, and employs more than twenty employees.

11.     Plaintiff began working for Defendant in approximately 2003 and remained employed until October 28, 2024, a period exceeding twenty (20) years.

12.     During his lengthy tenure, Plaintiff worked as a Registered Nurse in Defendant's Specialty Hospital, an LTACH environment, settings that require advanced clinical skill and sound professional judgment.

13.     Over the years, Plaintiff earned a reputation as a competent, caring, and dependable nurse who regularly assisted and mentored junior nurses during their orientation and training.

14.     Plaintiff received positive feedback from physicians, including the Medical Director, and was entrusted with leadership-level responsibilities beyond ordinary staff nursing duties.

15.     In recognition of his professionalism and patient care, Plaintiff received a Daisy Award.

16. Prior to 2024, Plaintiff did not have a history of terminable or serious discipline, and nothing in his employment record suggested he was at risk of termination.

17. Against this backdrop of long service and strong performance, Plaintiff sought advancement within the organization.

18. In or about January 2022, Plaintiff applied for the Weekday RN Supervisor (Tuesday–Wednesday–Thursday) position.

19. Plaintiff's candidacy was supported internally: the outgoing Supervisor recommended Plaintiff for the role, as did the hospital Administrator.

20. Plaintiff interviewed with the newly hired Director of Nursing and the Administrator, and the interview went well.

21. Notwithstanding Plaintiff's experience and support, a White female nurse who was newer to the Specialty unit was interviewed for the position before Plaintiff.

22. Rather than encouraging Plaintiff's advancement in the same manner as similarly situated candidates outside Plaintiff's protected classes, the Director of Nursing repeatedly attempted to dissuade Plaintiff from pursuing the Supervisor position and steered him toward alternative roles such as Clinical Educator and Clinical Coordinator.

23.    This discouragement was inconsistent with how the Director of Nursing treated younger, White, non-Filipino candidates and reflected early differential treatment toward Plaintiff.

24.    Plaintiff nevertheless attained the Supervisor position. After his promotion, the Director of Nursing's discriminatory treatment toward Plaintiff did not abate.

25.    Instead, the Director of Nursing's conduct toward Plaintiff escalated from discouragement into dismissive, humiliating, and hostile behavior, marking a clear deterioration in Plaintiff's treatment as compared to both his prior experience and the treatment of similarly situated employees outside his protected classes.

26.    From 2022 through 2024, Plaintiff was subjected to a pattern of humiliating and intimidating conduct by his supervisors.

27.    Supervisors repeatedly raised their hands toward Plaintiff during conversations to stop him from speaking, cut him off mid-sentence, and dismissed his suggestions—only to later adopt his suggestions.

28.    Plaintiff was repeatedly pulled from the break room during lunch under the guise of urgency, only to be questioned about trivial matters or issues for which he bore no responsibility.

29. Workplace disagreements escalated into physical crowding, yelling, and mockery following meetings, conduct that undermined Plaintiff's authority and professional standing in front of colleagues.

30. On July 17, 2024, Plaintiff was yelled at by a supervisor in front of coworkers, creating a humiliating and hostile work environment.

31. Plaintiff was also blamed in meetings for incidents that he was not responsible for and that occurred outside of his shift or outside his scope of responsibility.

32. The treatment of Plaintiff was biased.

33. Similarly situated employees who were younger, White, and not Filipino were not subjected to comparable conduct.

34. Defendant knew or should have known of this conduct and failed to take prompt or effective remedial action, allowing the hostile environment to persist.

35. As the discriminatory environment continued, Plaintiff again sought advancement and professional growth.

36. In or about mid-2024, Plaintiff applied for a Clinical Educator position.

37. Plaintiff was qualified for the Clinical Educator position based on his education, extensive clinical background, and prior supervisory experience.

38. During the early stages of the interview process, Plaintiff was encouraged, reinforcing his belief that his candidacy was genuinely being considered.

39. That encouragement later gave way to minimization of Plaintiff's qualifications, while Defendant simultaneously encouraged an agency nurse to apply for the same position.

40. Plaintiff was denied the Clinical Educator position under circumstances that further reflected a pattern of exclusion and disparate treatment.

41. Following this denial, Defendant's conduct toward Plaintiff escalated further, shifting from marginalization to punitive scrutiny. Plaintiff was disciplined and ultimately terminated for alleged medication and documentation issues.

42. Plaintiff was not afforded the benefit of progressive discipline.

43. Other nurses who were younger, White, and not Filipino committed comparable or more serious documentation and medication errors, including missed doses and inaccurate records.

44. Those employees were not terminated and, in many cases, were not disciplined at all following single-incident errors.

45. Plaintiff, by contrast, was singled out and treated more harshly.

46. Recognizing that the treatment he was experiencing was discriminatory, Plaintiff took steps to protect himself. On September 2, 2024, he

submitted a formal written complaint to Human Resources opposing discrimination based on race and age.

47. Plaintiff's complaint constituted protected activity under Title VII, the ADEA, 42 U.S.C. § 1981, and the PHRA.

48. Rather than addressing Plaintiff's concerns, Defendant intensified its scrutiny. On October 9, 2024, Plaintiff was assigned three patients, in addition to his supervisory responsibilities.

49. During that shift, a scheduled medication dose was not administered.

50. At shift handoff, Plaintiff expressly informed the incoming nurse that the dose had not been administered, ensuring transparency and continuity of care.

51. Despite this disclosure, Defendant later accused Plaintiff of falsifying records.

52. On or about October 23, 2024, Plaintiff was reprimanded, accused of misconduct, and suspended.

53. Defendant terminated Plaintiff's employment on October 28, 2024, approximately eight weeks after Plaintiff engaged in protected activity.

54. The close temporal proximity between Plaintiff's protected activity and his termination, combined with the preceding pattern of discriminatory and hostile treatment, supports a causal connection.

## COUNT I
## Race, Color, and National Origin Discrimination
## (Title VII – 42 U.S.C. § 2000e et seq.)

55.    Plaintiff incorporates by reference paragraphs 1 through 54 of this Complaint as if set forth fully here.

56.    Plaintiff is a member of protected classes based on his race, color, and national origin.

57.    Plaintiff was qualified for his position and performed his job duties satisfactorily.

58.    Plaintiff suffered adverse employment actions, including denial of promotion, disparate discipline, and termination.

59.    Plaintiff was subject to these adverse actions under circumstances giving rise to an inference of unlawful discrimination, including more favorable treatment of similarly situated employees outside Plaintiff's protected classes.

60.    Defendant intentionally discriminated against Plaintiff because of his race, color, and national origin.

61.    Defendant's conduct violated Title VII of the Civil Rights Act of 1964

WHEREFORE, Plaintiff seeks judgment against Defendant for:

a.    Back pay and lost employment benefits;

b.    Front pay or reinstatement;

c.    Compensatory damages for emotional distress, humiliation, pain and suffering, and loss of dignity;

d.    Punitive damages;

e.    Attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k);

f.    Pre- and post-judgment interest; and

g.    Such other equitable and legal relief as the Court deems just and proper.

## COUNT II
## Hostile Work Environment (Title VII)

62.    Plaintiff incorporates by reference paragraphs 1 through 61 of this Complaint as if set forth fully here.

63.    Plaintiff was subjected to unwelcome harassment based on protected characteristics.

64.    The harassment was severe or pervasive.

65.    Defendant failed to take appropriate corrective action.

WHEREFORE, Plaintiff seeks compensatory damages, punitive damages, injunctive relief, attorneys' fees and costs, interest and all other appropriate relief.

## COUNT III
## Retaliation (Title VII)

66.    Plaintiff incorporates by reference paragraphs 1 through 65 of this Complaint as if set forth fully here.

67.    Plaintiff engaged in protected activity.

68. Defendant subjected Plaintiff to materially adverse actions.

69. A causal connection exists.

WHEREFORE, Plaintiff seeks back pay and benefits, front pay or reinstatement, compensatory damages, punitive damages, attorneys' fees and costs, interest and appropriate equitable relief.

## COUNT IV
### Age Discrimination (ADEA)

70. Plaintiff incorporates by reference paragraphs 1 through 69 of this Complaint as if set forth fully here.

71. Plaintiff was over forty (40) years old.

72. Plaintiff was qualified and suffered adverse actions.

73. Age was the but-for cause.

WHEREFORE, Plaintiff seeks back pay and lost benefits, front pay or reinstatement, liquidated damages for willful violations, attorneys' fees and costs, interest and all relief permitted by law.

## COUNT V
### Retaliation (ADEA)

74. Plaintiff incorporates by reference paragraphs 1 through 73 of this Complaint as if set forth fully here.

75. Plaintiff engaged in protected ADEA activity.

76. Defendant retaliated against Plaintiff.

WHEREFORE, Plaintiff seeks back pay and benefits, front pay or reinstatement, liquidated damages, attorneys' fees and costs, interest and legal and equitable relief.

## COUNT VI
## Race Discrimination and Retaliation (42 U.S.C. § 1981)

77.   Plaintiff incorporates by reference paragraphs 1 through 76 of this Complaint as if set forth fully here.

78.   Defendant interfered with Plaintiff's contractual employment rights on the basis of race and retaliation.

WHEREFORE, Plaintiff seeks back pay, compensatory damages, punitive damages, attorneys' fees and costs under 42 U.S.C. § 1988, interest and all appropriate relief.

## COUNT VII
## Discrimination, Hostile Work Environment, and Retaliation (PHRA)

79.   Plaintiff incorporates by reference paragraphs 1 through 78 of this Complaint as if set forth fully here.

80.   Defendant violated the PHRA.

WHEREFORE, Plaintiff seeks back pay and benefits, front pay or reinstatement, compensatory damages, attorneys' fees and costs, injunctive relief, interest and all relief permitted under Pennsylvania law.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

**BROUGHAL & DeVITO, L.L.P.**

Dated:    5/07/2026          By:    /s/ John S. Harrison
**JOHN S. HARRISON, ESQUIRE**
Attorney I.D. No. 53864
**ERIKA A. FARKAS, ESQUIRE**
Attorney I.D. No. 313686
38 West Market Street
Bethlehem, PA 18018
Telephone No.:  (610) 865-3664
Facsimile No.:  (610) 865-0969
*Attorneys for Plaintiff*